# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

COLLABERA, LLC,

                Plaintiff,

v.

INNOVA SOLUTIONS, INC.;
PAMELA REYNOLDS; and JOHN
MANLEY,

                Defendants.

Case No. 25-cv-0020 (LMP/ECW)

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS**

---

Elizabeth Bulat and Matthew D. Treco, **Martenson, Hasbrouck & Simon LLP, Atlanta, GA**; Maya S. Marshall, **Martenson, Hasbrouck & Simon LLP, Dallas, TX**; and Tina A. Syring-Petrocchi and Carli D. Pearson, **Husch Blackwell LLP, Minneapolis, MN**, for Plaintiff.

Jacqueline C. Johnson and Aarika N. Johnson, **Constancy, Brooks, Smith & Prophete, LLP, Dallas, TX**; and Jason D. Friedman, **Constancy, Brooks, Smith & Prophete, LLP, Fairfax, VA**, for Defendants.

Plaintiff Collabera, LLC ("Collabera"), brought this lawsuit against Defendants Innova Solutions, Inc. ("Innova"), Pamela Reynolds ("Reynolds"), and John Manley ("Manley") (collectively, "Defendants"), alleging that Reynolds and Manley—both former Collabera employees—breached the terms of restrictive covenants they entered with Collabera and that Innova induced those breaches. *See generally* ECF No. 38. Collabera also alleges that Manley, with Innova's knowledge and at its direction, misappropriated Collabera's trade secrets. *Id.* Defendants move to dismiss Collabera's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil

Procedure 12(b)(6). ECF No. 43. For the reasons discussed below, Defendants' motion is denied.

## BACKGROUND[1]

Collabera and Innova are longtime competitors that offer professional information technology recruiting, staffing, consulting, and other business services to a variety of companies. ECF No. 38 ¶¶ 10–14. The companies compete in the same geographic markets for the same customers and to recruit the same types of employees. *Id.* ¶ 14. Since its founding, Collabera has developed what it considers to be valuable confidential information through its business and professional relationships and the services it provides, which it considers to be trade secrets. *Id.* ¶ 16.

At issue in this case are agreements entered between Collabera, on the one hand, and Reynolds and Manley, on the other, while they were employed by Collabera. *See* ECF Nos. 38-1, 38-2. Collabera hired Reynolds as a Senior Account Executive in December 2009 and eventually promoted her to Senior Vice President of Enterprise Sales. ECF No. 38 ¶ 31. Reynolds left Collabera briefly in August 2021 but returned in 2022. *Id.* ¶ 32. Upon returning to Collabera, and as a condition of employment, Reynolds executed an agreement containing confidentiality and non-solicitation provisions and, shortly thereafter, executed another such agreement in November 2022 after Collabera underwent a corporate restructure. *Id.*; *see* ECF No. 38-1.

---

[1]    The factual background is drawn from the amended complaint and exhibits attached thereto. *See* ECF Nos. 38, 38-1, 38-2. At this stage, the Court accepts the complaint's factual allegations as true. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

Collabera hired Manley as a Regional Director in August 2015 and eventually promoted him to a Vice President position. ECF No. 38 ¶¶ 43, 53. On August 6, 2015, and as a condition of his employment, Manley executed an agreement that is substantively similar to Reynolds's, containing the same restrictive covenants. *Id.* ¶ 44; *see* ECF No. 38-2.

The confidentiality provision of the agreements prohibits Reynolds and Manley from disclosing Collabera's "Confidential Information," defined broadly as Collabera's "trade secrets and other legally protectable information that is maintained as confidential by [Collabera], and that is not authorized for disclosure to the public." ECF No. 38-1 at 2; ECF No. 38-2 at 2. More specifically, as contemplated by the agreements, "Confidential Information" includes, without limitation:

> (a) all internal systems used by Collabera . . . ; (b) customer and customer contact lists, customer leads or prospects, customer history and analysis; (c) marketing plans, strategies and analysis; (d) information concerning assessments of [Collabera's] employees and their relative skills, weaknesses, and expertise; (e) information regarding [Collabera's] key contractor relationships, including terms thereof; (f) [Collabera's] business plans and analysis; (g) [Collabera's] buying practices; (h) non-public financial records; (i) research and development data, including information regarding new products or services not yet released to the public; (j) technical data, know-how, innovations, computer programs, un-patented inventions, and trade secrets; (k) operational data, methods, [and] techniques; (l) [Collabera's] programs to minimize environmental hazards and health and safety risks to [Collabera] employees; and (m) information about the business affairs of third parties (including, but not limited to, customers) that such third parties provide to [Collabera] in confidence.

ECF No. 38-1 at 2–3; *see also* ECF No. 38-2 at 2–3; ECF No. 38 ¶ 27. Collabera asserts that such information is kept "strictly confidential in order to maintain [Collabera's]

3

competitive advantage" and is "maintained on password protected networks accessible only by certain" Collabera employees.  ECF No. 38 ¶¶ 49–50.

While employed by Collabera, Manley "had access to and utilized Collabera's Confidential Information and trade secrets regularly," including Collabera's "Strategic Sales Manual" (the "Manual").  ECF No. 38 ¶¶ 47, 59.  According to Collabera, the Manual "prescribes a set of analytical processes and methodologies, and organizational methods, to leverage a combination of specific technological tools and proprietary Collabera data to improve identification of market trends and related sales opportunities, maximize the effect of sales meetings, and improve the accuracy of applicant screening." *Id.* ¶¶ 60–62.  Manley was also "authorized to leverage Collabera's goodwill and represent Collabera in communication with customers" and "to participate in specialized training concerning Collabera's Confidential Information and trade secrets." *Id.* ¶ 45.

The non-solicitation provision provides that for twenty-four months following the conclusion of Reynolds's and Manley's employment with Collabera, Reynolds and Manley:

> will not interfere with [Collabera's] business relationship with a [Collabera] employee, by: (a) soliciting or communicating with such an employee to induce or encourage him or her to leave [Collabera's] employ (regardless of who first initiates the communication); (b) helping another person or entity evaluate a [Collabera] employee as an employment candidate; or (c) otherwise helping any person or entity hire an employee away from [Collabera]; unless a duly authorized [Collabera] officer gives [Reynolds or Manley] written authorization to do so.

ECF No. 38-2 at 7; *see also* ECF No. 38-1 at 8; ECF No. 38 ¶¶ 23–24.

Reynolds resigned from her position at Collabera on or around June 3, 2024, to accept her current position as Innova's Senior Vice President of Enterprise and Strategic Sales. ECF No. 38 ¶¶ 33, 35. On or around July 25, 2024, Manley resigned from his position at Collabera to accept a position as Innova's Senior Vice President of Global Solutions and Markets beginning in August 2024. *Id.* ¶¶ 53, 55. At the time of their resignations, Collabera reminded Reynolds and Manley of their confidentiality and non-solicitation obligations under the agreements. *Id.* ¶¶ 34, 54.

Collabera alleges, upon information and belief, that Reynolds and Manley informed Innova of the agreements before accepting employment with Innova, as required by the agreements. *Id.* ¶¶ 36, 56, 69; *see* ECF No. 38-1 at 9 ("Employee will advise any future employer of the restrictions in this Agreement before accepting new employment . . . ."); ECF No. 38-2 at 7–8 (same). Nevertheless, Collabera alleges that Reynolds and Manley, at Innova's direction, have solicited Collabera employees to work for Innova. ECF No. 38 ¶¶ 37–39, 41, 64–67. Collabera specifically identifies six former Collabera employees who were allegedly solicited by Reynolds and Manley, four of whom did, in fact, leave Collabera to join Innova. *See id.* Collabera further alleges that Manley disclosed confidential information he learned from the Manual during a training session he conducted for Innova "in or around late September to early November 2024." *Id.* ¶¶ 57–58. Collabera asserts that Innova directed or otherwise approved of Manley's use of Collabera's confidential information for Innova's benefit. *Id.* ¶ 75.

On November 20, 2024, Collabera provided written notice to Innova regarding the restrictive covenants to which Reynolds and Manley had agreed. *Id.* ¶ 70. Innova

acknowledged receipt of the notice on December 12, 2024, and confirmed it had reviewed the agreements. *Id.* ¶ 71. Collabera alleges that Innova nonetheless continued to direct or otherwise encourage Reynolds and Manley to engage in conduct prohibited by the non-solicitation and confidentiality provisions of their agreements. *See id.* ¶¶ 72–75.

Collabera asserts claims for breach of contract against Reynolds and Manley, *id.* ¶¶ 76–85; violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq.*, against Manley and Innova, *id.* ¶¶ 86–109; and tortious interference with contractual relations against Innova, *id.* ¶¶ 110–17.

## ANALYSIS

### I. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court "accept[s] as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of the nonmoving party." *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (internal quotation marks omitted) (citation omitted). Courts may also consider documents that are "attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citation omitted). The complaint "need not set forth detailed factual allegations, or specific facts that describe the evidence to be presented," it still "must include sufficient factual allegations to provide the grounds on which the claim rests." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 795–96 (8th Cir. 2021) (internal quotation marks

omitted) (citation omitted).  Mere recitations of the elements of a cause of action are insufficient to state a plausible claim for relief, and a court does not accept as true legal conclusions couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II.    Breach of Contract — Count I

To establish valid claims for breach of contract under Minnesota law,[2] Collabera must plead facts showing: (1) formation of valid contracts; (2) performance of any conditions precedent to its right to demand performance; and (3) breach of the contracts by Reynolds and Manley.  *Metro. Transp. Network, Inc. v. Collaborative Student Transp. of Minn., LLC*, 6 N.W.3d 771, 782 (Minn. Ct. App. 2024).

Defendants advance two arguments in support of their motion to dismiss Collabera's breach-of-contract claims.  First, Defendants contend that Manley's agreement with Collabera is unenforceable in its entirety for lack of consideration.  *See* ECF No. 44 at 14–

---

[2]    Both agreements contain choice-of-law and forum-selection clauses which state that the agreements are to be construed under New Jersey law and that the federal and state courts in Morris County, New Jersey, are the exclusive venues to resolve any disputes arising from the agreements.  *See* ECF No. 38-1 at 11–12; ECF No. 38-2 at 9.  Reynolds's agreement also contains an arbitration clause which requires that "any claim, complaint, or dispute that arises out of or relates in any way to [the] Agreement or to the Parties' employment relationship . . . shall be submitted to binding arbitration."  ECF No. 38-1 at 10–11.  In their briefing, however, none of the parties acknowledge or invoke these provisions, and the parties cite exclusively to Minnesota law regarding Collabera's common-law claims.  *See generally* ECF Nos. 44, 51, 56.  At oral argument, counsel for the parties confirmed that they are waiving the choice-of-law, forum-selection, and arbitration clauses and believe that Minnesota law should govern the agreements.  The Court acknowledges and accepts the parties' waivers and proceeds with analyzing Defendant's motion to dismiss Collabera's common-law claims under Minnesota law.

16.  Second, Defendants assert that the confidentiality and non-solicitation provisions are overbroad and unenforceable.  *Id.* at 10–14.  The Court addresses each argument in turn.

### A.    Consideration

While permissible, restrictive covenants in employment agreements generally are disfavored under Minnesota law because of their potential to restrain trade.  *Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn. 1982).  If an employer and employee enter such a restrictive covenant "at the inception of the employment relationship," independent consideration—that is, consideration separate from employment itself—generally is not required.  *Safety Ctr., Inc. v. Stier*, 903 N.W.2d 896, 899 (Minn. Ct. App. 2017) (citation omitted).  But if a restrictive covenant is not "ancillary" to an employment agreement, or if the restrictive covenant is imposed after the employment relationship has already begun, independent consideration must be provided to the employee for the agreement to be valid and enforceable.  *Id.* at 898–99.  "The adequacy of consideration for restrictive covenants signed during an ongoing employment relationship will depend upon the facts of each case."  *Ballast Advisors, LLC v. Peterson*, No. 23-cv-3769 (PJS/TNL), 2024 WL 5075600, at *2 (quoting *Freeman v. Duluth Clinic, Inc.*, 334 N.W.2d 626, 630 (Minn. 1983)).

Defendants argue that Manley entered his agreement after he had already begun his employment with Collabera and did not receive independent consideration, rendering the agreement invalid and unenforceable.  ECF No. 44 at 14–16.  But Collabera has alleged that Manley executed his agreement "[a]s a condition of [his] employment, and *at the time of his hire*."  ECF No. 38 ¶ 44 (emphasis added).  Collabera further alleges—and Manley's

agreement expressly states—that in consideration for agreeing to the agreement's restrictive covenants, Manley was: (1) given access to Collabera's confidential information and trade secrets; (2) authorized to "leverage Collabera's goodwill" and represent Collabera in communication with customers; and (3) authorized to participate in specialized training concerning Collabera's confidential information and trade secrets. *Id.* ¶ 45; *see also* ECF No. 38-2 at 3. Moreover, the agreement expressly states that Manley "understands and agrees that this consideration has material value and benefit, and that he[] would not be entitled to it unless he[] signed the Agreement." ECF No. 38-2 at 3.

Taken as true, which the Court must do at this stage, Collabera's allegation that Manley entered the non-solicitation agreement at the inception of his employment with Collabera renders the requirement for consideration independent from Manley's employment unnecessary. *See Safety Ctr.*, 903 N.W.2d at 899. To the extent independent consideration may have been required, determining the adequacy of such consideration is inherently a factual question that is more appropriately resolved at a later stage with a more developed record. *See Ballast Advisors*, 2024 WL 5075600, at *2. At this stage, and as pleaded, Collabera has plausibly alleged facts to show that Manley received adequate consideration in exchange for entering the agreement. *See id.*

## B.    Enforceability

Defendants next argue that the confidentiality and non-solicitation provisions in Reynolds's and Manley's agreements with Collabera are impermissibly broad and therefore unenforceable. *See* ECF No. 44 at 10–14. To be enforceable under Minnesota law, a restrictive covenant "must be no broader than necessary to protect the employer's

legitimate interests." *Midwest Sign & Screen Printing Supply Co. v. Calpe*, 386 F. Supp. 3d 1037, 1047 (D. Minn. 2019) (citing *Kallok v. Medtronic*, 573 N.W.2d 356, 361 (Minn. 1998)).  To determine whether a restrictive covenant is enforceable, Minnesota courts consider, as relevant here, the nature and character of the employment, the length of time the restriction is to be imposed, and "whether the restraint is necessary to protect the employer's goodwill, trade secrets, or confidential information." *Id.* (citations omitted).  If an agreement contains multiple restrictive covenants, each must be analyzed independently for reasonableness. *Yonak v. Hawker Well Works, Inc.*, No. A14-1221, 2015 WL 1514166, at *5 (Minn. Ct. App. Apr. 6, 2015) (citing *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn. Ct. App. 1993)).

### 1.    Confidentiality

Defendants characterize the definition of "Confidential Information" in Manley's agreement[3] as so broad that it includes "*any* information pertaining to Collabera, its subsidiaries, or its affiliates which is not generally known or ascertainable by Collabera's competitors or the general public." *Id.* at 12.  More specifically, Defendants contend that customer names, which are included in the agreement's definition of "Confidential Information," ECF No. 38-2 at 2–3, generally are not considered "confidential" because they may be ascertained independently through proper means, ECF No. 44 at 12 (citation omitted).  "At minimum," Defendants continue, "the confidentiality provision is

---

[3]    Collabera asserts breach of the confidentiality provision only as to Manley, *see* ECF No. 38 ¶¶ 76–85, so the Court limits its analysis here to that provision in Manley's agreement.

ambiguous, and should be construed against Collabera as the drafter." *Id.* (citation omitted).

Collabera responds that Defendants "focus narrowly on isolated contract language to the exclusion of the broader definition of 'Confidential Information'" and are attempting to impose an "incomplete and unnatural reading" of the confidentiality provision. ECF No. 51 at 13. Collabera asserts that Defendants' interpretation of the confidentiality provision is not supported by a fair reading of the agreement as a whole and that the confidentiality provision's breadth is legally permissible. *Id.* at 12 (citation omitted).

Defendants are correct that customer lists, by themselves, generally are not considered to be "protectable as trade secrets or confidential information." *Fulton v. Honkamp Krueger Fin. Servs., Inc.*, No. 20-cv-1063 (PJS/DTS), 2020 WL 7041766, at *7 (D. Minn. Dec. 1, 2020). But Collabera's allegations are not limited to accusations that Manley misappropriated Collabera's customer lists. Collabera also alleges that Manley misappropriated "pricing information," "sales training information," and other information contained within the Manual, which Collabera asserts are confidential and protectable trade secrets. ECF No. 38 ¶¶ 52, 57–63.

Defendants argue that the purported trade secrets at issue here amount only to "generally known principles in the industry" which "cannot be considered trade secrets and are not entitled to protection." ECF No. 44 at 12. That may be so, but Defendants' argument is premature. At this stage, the Court must accept Collabera's factual allegations as true. To the extent Collabera must establish the purportedly misappropriated information is legally protectable to prove that Manley breached the confidentiality

provision,[4] it has pleaded sufficient facts to survive Defendants' motion to dismiss. *Cf.*

*Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 955 (8th Cir. 2023) (holding

"customer lists, . . . pricing information, and marketing strategies" were adequately alleged

as "trade secrets" under the DTSA for purposes of Rule 12(b)(6) motion).

### 2.    Non-Solicitation

Defendants argue the employee non-solicitation provision "extend[s] beyond what

is necessary to protect Collabera's legitimate interests" because it "prohibits Reynolds and

Manley from more than just solicitation," but also "prevents them [from] even

communicating about a Collabera employee if that communication would enable another

person or company to evaluate the employee as an employment candidate." ECF No. 44

at 13. Defendants contend that "[p]articipating in the onboarding of employees who

independently decide to leave their employer is not 'solicitation' and does not implicate

any legitimate protectable interest." *Id.* at 13–14.

Collabera responds that Defendants' characterization of the breadth of the non-

solicitation provision is "an overstatement." ECF No. 51 at 14. Collabera insists the

provision would not prevent Reynolds or Manley from participating in onboarding a former

Collabera employee but instead would only prevent them from "recruiting" the former

employee. *Id.* Collabera also contends the provision is intended to "contemplate situations

in which an Innova representative is merely the 'cat's paw,' but Manley and Reynolds are

---

[4]    Under the confidentiality provision, "'Confidential Information' refers to
[Collabera's] *trade secrets* and any other *legally protectable information* that is maintained
as confidential by [Collabera]." ECF No. 38-2 at 2 (emphasis added).

directing them to solicit" Collabera employees. *Id.* Collabera argues the non-solicitation provision is "designed to protect Collabera's legitimate business interest in the time and money that is spent recruiting, training, and developing its employees." *Id.*

The Court notes, as an initial matter, that there is little guidance in Minnesota case law discussing or analyzing the enforceability of an employee non-solicitation provision like the one at issue here. *See Marco Techs., LLC v. Midkiff*, No. 73-CV-19-6757, 2021 WL 6200956, at *18 (Minn. Dist. Ct. Oct. 28, 2021). Litigation seems to be far more common in the context of the solicitation of customers rather than employees. The Court therefore "must predict how the Supreme Court of Minnesota would rule, and [] follow decisions of the intermediate state court when they are the best evidence of Minnesota law." *Neth. Ins. Co. v. Main St. Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) (citation omitted). *Midkiff*, which Defendants cite and Collabera does not address, is instructive.

In *Midkiff*, the plaintiff accused its former employees of having breached an employee non-solicitation provision in their employment agreements. 2021 WL 6200956, at *2. That non-solicitation provision read as follows:

> During the term of employment with the Company and for one (1) year thereafter, Employee shall not engage, directly or indirectly, in any activity or communication that has the effect of or is intended to have the effect of persuading or attempting to persuade any employee of Company to leave Company's employ or to become employed by any entity, company, enterprise, organization, individual, or individuals other than Company.

*Id.* On summary judgment, the court, acknowledging the lack of guidance in Minnesota case law and relying instead on Wisconsin law, determined that the non-solicitation provision was "overbroad as a matter of law" because it "restricts an employee or former

employee from engaging in a direct or indirect activity or communication that *has the effect of* persuading an employee to leave [the plaintiff's] employ, even if that conduct was not intended to have such an effect." *Id.* at *19.

On its face, the non-solicitation provision at issue here appears to be similarly broad in that it purports to prohibit more conduct than pure solicitation. *Cf. Benfield, Inc. v. Moline*, No. 04-cv-3513 (MJD/SRN), 2006 WL 452903, at *6 (D. Minn. Feb. 22, 2006) ("Solicitation requires some element of attempted persuasion."); *see also Solicitation*, Black's Law Dictionary (12th ed. 2024) (defining "solicitation" as the "act or an instance of requesting or seeking to obtain something"). For example, the second subpart of the non-solicitation provision prohibits Reynolds and Manley from "helping another person or entity evaluate a [Collabera] employee as an employment candidate." ECF No. 38-1 at 8; ECF No. 38-2 at 7. Consequently, under a plain reading of that subpart, if one of Reynolds's former colleagues applied for a job at Innova without Reynolds's knowledge or encouragement and named Reynolds as a reference, and a person responsible for hiring decisions at Innova contacted Reynolds to ask about her experience working with that former colleague, any substantive response from Reynolds could be construed as "help[ing]" Innova "evaluate" that former colleague as an "employment candidate"—even if she gave a negative recommendation. *See* ECF No. 38-1 at 8. In such a scenario, confoundingly, Reynolds arguably could be in breach even if her negative recommendation actually *prevented* Innova from hiring that former colleague.

The third subpart, which broadly purports to prohibit Reynolds and Manley from "helping any person or entity hire an employee away from" Collabera, suffers from similar

problems because it does not require any explicit act of solicitation by Reynolds or Manley—that is, direct or indirect communication with a Collabera employee for the purpose of persuading them to leave Collabera's employment. *Cf. Benfield*, 2006 WL 452903, at *6.

But the non-solicitation provision here is meaningfully different from the one in *Midkiff*, at least in relevant part. In that case, the Minnesota court was primarily concerned that the non-solicitation provision was so broad that vague or otherwise innocuous statements which could not reasonably be characterized as "solicitations" were nonetheless prohibited by the non-solicitation provision if they could "*ha[ve] the effect* of persuading an employee to leave [the plaintiff's] employ," even if that was not the purpose or intent of the statements. *Midkiff*, 2021 WL 6200956, at *19. Here, although the Court questions the breadth of the non-solicitation provision's second and third subparts for the reasons addressed in this order, the first subpart does not venture so far beyond what is understood to be "solicitation" under Minnesota law. *Cf. Benfield*, 2006 WL 452903, at *6.

Under the first subpart, Reynolds and Manley are prohibited from "soliciting or communicating with [a Collabera] employee to induce or encourage him or her to leave [Collabera's] employ (regardless of who first initiates the communication)." ECF No. 38-1 at 8. The Court reads "to induce or encourage" to supply the element of intent that was missing in *Midkiff*. That language appropriately cabins the scope of prohibited conduct to communications that were made *for the purpose of* persuading Collabera employees to

leave Collabera rather than purporting to proscribe any communications that *have the effect of* persuading Collabera employees to leave Collabera.[5]  This difference seems material.

Moreover, the Court observes that the subparts of the non-solicitation provision are disjunctive, *e.g.*, ECF No. 38-1 at 8, and the agreements contain a severability provision stating that "[i]t is the intention of the parties that if any provision of the Agreement is determined . . . to be void, illegal or unenforceable, *in whole or in part*, all other provisions will remain in full force and effect," *e.g.*, *id.* at 11 (emphasis added).  And the Court is mindful that "[t]he primary goal of contract interpretation is to determine and enforce the intent of the parties."  *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003).  Defendants have not advanced any argument that the severability provision is invalid or that the non-solicitation clause's subparts are not severable such that, to the extent any subpart is deemed unenforceable, the remaining subpart or subparts would not remain in effect.

---

[5]    To be sure, even the first subpart of the non-solicitation provision appears to be at odds with the "great weight of authority" holding that "solicitation" does not occur when the allegedly solicited party initiates contact with the party subject to a non-solicitation agreement.  *Cf. Honeywell Int'l Inc. v. Stacey*, No. 13-cv-3056 (PJS/JJK), 2013 WL 9851104, at *8 & n.5 (D. Minn. Dec. 11, 2013) (collecting cases explaining this principle in the context of customer non-solicitation agreements); *Ballast Advisors*, 2024 WL 5075600, at *3 n.4 (D. Minn. Dec. 11, 2024) (opining, without deciding, that a customer non-solicitation clause may be "invalid as against public policy" under Minnesota law where it could have the effect of "effectively bar[ring] the *client* from continuing her relationship with her financial advisor, even if the financial advisor has not solicited or even initiated contact with that client").  The Court will reserve a determination on the enforceability of the non-solicitation provision until the factual record is more developed.

In short, while skeptical of the non-solicitation provision's breadth, the Court is wary of making a legal determination as to the enforceability of that provision at this early stage given the fact-dependent nature of the inquiry. *See Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 899–900 (Minn. 1965) (reasoning, on summary judgment, that the validity of a restrictive covenant is highly fact-dependent and thus often inappropriate for resolution as a matter of law); *Ballast Advisors*, 2024 WL 5075600, at *3 (declining, at the pleadings stage, to hold a customer non-solicitation provision unenforceable as a matter of law because of "factual issues that need to be explored in discovery"). Collabera has sufficiently pleaded facts that show the existence of valid contracts, the performance of its requirements under the contracts, conduct by Reynolds and Manley that (if proven) would constitute breaches of the contracts, and damages. *See Metro. Transp. Network*, 6 N.W.3d at 782. Other than asserting lack of consideration and unenforceability, Defendants do not dispute that Collabera has stated a valid claim for breach of the non-solicitation provision. Accordingly, the Court denies Defendants' motion to dismiss those claims.

## III.    Defend Trade Secrets Act (DTSA) — Counts II and III

The DTSA permits the "owner of a trade secret that is misappropriated" to bring a civil action against the misappropriating party "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). To state a claim for misappropriation of trade secrets, a plaintiff must allege "the existence of a protectable trade secret and misappropriation of that trade secret." *Ahern Rentals*, 59 F.4th at 955 (citation omitted).

17

Defendants argue that Collabera's DTSA claims fail on both the "existence" and "misappropriation" elements. ECF No. 44 at 16–22. The Court addresses each in turn.

## A.    Existence of Trade Secret

The DTSA defines "trade secret" as information that the owner has taken reasonable measures to keep secret and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). To adequately plead the "existence" element, a plaintiff must "define its alleged trade secrets with sufficient specificity." *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 967 (D. Minn. 2018) (citation omitted).

Defendants assert that the Manual, which Manley allegedly misappropriated at Innova's direction, cannot constitute legally protectable trade secrets because it is comprised of "stale" market and sales information which "has no economic value." *Id.* at 22–24 (quoting *Fox Sports Network N., LLC v. Minn. Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003)). Collabera responds that its pleadings sufficiently establish that the Manual, at least, contains information that courts have deemed protectable as trade secrets. *See* ECF No. 51 at 16–17. Collabera argues that it has demonstrated why the information is valuable and the steps it has taken to protect the secrecy of the information. *Id.* at 18.

Collabera adequately alleges that the information that was purportedly misappropriated—including the information contained in the Manual, customer lists, marketing and sales plans and strategies, and pricing information, ECF No. 38 ¶¶ 17, 60–62—qualify as trade secrets. Taken as true, Collabera's allegations establish that the

18

information helps Collabera "maintain a competitive advantage," *id.* ¶ 49, by virtue of it

"not being readily known or ascertainable" by the public, *Ahern Rentals*, 59 F.4th at 955.

And Collabera identifies several ways in which it endeavors to keep the information secret,

including by "requiring employees who have access to, and make use of, such information

to sign contracts containing restrictive covenants" prohibiting unauthorized disclosure of

such information and maintaining the information on internal, password-protected

networks accessible only by certain Collabera employees.  ECF No. 38 ¶¶ 19, 50; *see Ahern

Rentals*, 59 F.4th at 955 (finding information was adequately alleged to be a trade secret

when the plaintiff identified "several steps that it takes to keep this information secret").

Defendants' argument that the Manual is comprised of "stale" market and sales

information is premature.  None of the parties has submitted the Manual as an exhibit, and

the Court therefore has no manner of assessing the truth of that assertion based on

Collabera's allegations.  And at this stage, the Court must presume the truth of Collabera's

factual allegations and draw reasonable inferences in its favor.  *Gorog*, 760 F.3d at 792.

Whether the information in the Manual is "stale" such that it lacks economic value is

inherently a fact-dependent determination which, in the absence of the Manual itself, the

Court lacks adequate information to make.  Collabera's pleadings are sufficient at this stage

to establish the existence of a trade secret.  *See Ahern Rentals*, 59 F.4th at 955.

## B.    Misappropriation

The DTSA defines "misappropriation" as the "acquisition . . . by improper means,"

"disclosure," or "use" of another's trade secret by someone who "at the time of disclosure

or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired

under circumstances giving rise to a duty to maintain the secrecy of the trade secret" or "derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret."  18 U.S.C. § 1839(5).

Defendants contend that Collabera has not adequately alleged that Manley or Innova acquired the purportedly misappropriated information through "improper means" and that there are no specific allegations that Manley or Innova used any of the allegedly misappropriated information.  ECF No. 44 at 24–27.  Defendants emphasize that Collabera's fears that Manley "might have taken (completely undefined) trade secrets with him on his way out the door, and that [Innova] might use these trade secrets to [its] advantage, at some unknown future date, do not give rise to a plausible claim of trade secret misappropriation."  *Id.* at 20 (quoting *CH Bus Sales, Inc. v. Geiger*, No. 18-cv-2444 (SRN/KMM), 2019 WL 1282110, at *10 (D. Minn. Mar. 20, 2019)).

Collabera responds that Defendants focus narrowly on the "use" requirement and ignore that misappropriation can be established by showing improper "acquisition" and "disclosure" of the purported trade secrets.  ECF No. 51 at 19–20.  Collabera cites its allegations that Innova, with knowledge of Manley's confidentiality obligations to Collabera, directed or encouraged Manley to disclose information in the Manual without Collabera's authorization.  *Id.*

The Court agrees with Collabera at this time.  Accepted as true, Collabera's allegations establish that Manley, as the party bound by the confidentiality provision, knew he had "acquired" Collabera's confidential information "under circumstances giving rise to a duty to maintain the secrecy of" that information, but nevertheless disclosed it during

an Innova sales training call. 18 U.S.C. § 1839(5)(B)(ii)(II); *see* ECF No. 38 ¶¶ 44–51, 57–59. As for Innova, Collabera alleges that Reynolds and Manley informed Innova of the restrictive covenants before accepting their positions at Innova, ECF No. 38 ¶ 69, and that Innova "directed Manley . . . to use Collabera's proprietary information for Innova's benefit," *id.* ¶ 75.

Defendants' reliance on *CH Bus Sales* is unavailing. In that case, the plaintiff alleged merely that "[it did] not yet know the full extent of" the defendant's violation of a confidentiality agreement between the parties but that "it believe[d]" the defendant had misappropriated the plaintiff's confidential information and trade secrets. *CH Bus Sales*, 2019 WL 1282110, at *4. The court found that the plaintiff's complaint "contain[ed] no plausible factual allegation that [the defendant] (much less [the defendant's employer]) 'acquired, disclosed, or used'" any of the plaintiff's trade secrets. *Id.* at *10. The court further explained that the plaintiff's "[m]ere fears" that its former employee "*might* have taken . . . trade secrets with him on his way out the door, and that [the defendant's] new employer *might* use [the] trade secrets to [its] advantage, at some unknown future date, do not give rise to a plausible claim of trade secret misappropriation." *Id.*

Here, more than mere belief is alleged. Collabera has alleged that Manley "disclosed" information in the Manual during an Innova training call at some point between September and November 2024. ECF No. 38 ¶¶ 57–58. That allegation, while somewhat lacking in temporal specificity, goes beyond the more speculative and conclusory allegations in *CH Bus Sales*. In other words, Collabera does not rely on "[m]ere fears" of some hypothetical future use or disclosure of its purported trade secrets by Manley or

Innova, *CH Bus Sales*, 2019 WL 1282110, at *10, but rather identifies an instance which (if proven) would show that Manley, at Innova's direction, disclosed information that Manley and Innova knew he acquired under circumstances that required Manley to keep the information secret, *see* 18 U.S.C. § 1839(5). And although many of Collabera's allegations are pleaded "upon information and belief," *see, e.g.*, ECF No. 38 ¶ 57, such pleadings are sufficient at this stage because proof supporting those allegations "is within the sole possession and control of" Manley and Innova, *Ahern Rentals*, 59 F.4th at 954.

The Court finds that Collabera has pleaded facts which plausibly allege violations of the DTSA by Manley and Innova. Defendant's motion to dismiss therefore is denied as to Collabera's DTSA claims.

## IV.    Tortious Interference — Count IV

To state a claim for tortious interference with contract under Minnesota law, Collabera must allege facts showing that: (1) its contracts with Reynolds and Manley are valid and enforceable; (2) Innova had knowledge of the contracts; (3) Innova intentionally procured breaches of the contracts; (4) Innova had no justification for procuring the breaches; and (5) Collabera suffered damages as a result. *Cent. Specialties, Inc. v. Large*, 18 F.4th 989, 998 (8th Cir. 2021) (quoting *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994) (en banc)). "[T]he knowledge element of tortious interference does not require specific knowledge, only awareness of some kind of business arrangement." *Dunn v. Assocs. in Psychiatry & Psych., P.A.*, No. 22-cv-615 (NEB/DJF), 2022 WL 22694603, at *7 (D. Minn. Nov. 10, 2022) (alteration in original) (citation omitted). In other words, "[i]t is enough if the defendant had knowledge of facts which, if followed by reasonable inquiry,

would have led to complete disclosure of the contractual relations and rights of the parties." *Kjesbo*, 517 N.W.2d at 588 n.3.

Defendants first argue that Collabera's tortious interference claim must be dismissed because the contracts underlying the claim are invalid. ECF No. 44 at 23. But as discussed above, Collabera has alleged the existence of contracts which the Court declines to hold unenforceable at this stage.

Otherwise, Defendants contend that the complaint is "devoid of any nonconclusory factual allegations concerning any actions by Innova to induce Reynolds or Manley to breach their restrictive covenant agreements." *Id.* at 22. Defendants attack Collabera's allegations pleaded "upon information and belief" as inadequate to state a valid claim of tortious interference. *Id.* at 23–24.

The Court does not agree. Collabera alleges that Innova knew of the existence of the agreements before Reynolds and Manley accepted employment with Innova and, in any event, by no later than November 20, 2024, when Collabera sent written notice to Innova about the agreements. ECF No. 38 ¶¶ 69–70. Collabera further alleges that Innova "directed Reynolds and Manley to solicit former Collabera employees, even after Reynolds and Manley advised Innova [of] their respective post-employment restrictions," *id.* ¶ 72, "without lawful justification or legitimate reason," *id.* ¶ 114. And Collabera contends it "has suffered damages in an amount to be proven at trial" as a result of Innova's purported interference. *Id.* ¶ 115. As already discussed, Defendants' argument that Collabera's allegations pleaded "upon information and belief" are insufficient is unavailing because

evidence supporting those allegations is within Defendants' "sole possession and control." *Ahern Rentals*, 59 F.4th at 954.

Collabera has plausibly alleged a claim for tortious interference, and the Court believes dismissal at this stage would be inappropriate. And because the Court reaches the same conclusion as to the rest of Collabera's claims at this stage, Defendants' motion to dismiss is denied in its entirety.

## CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 43) is **DENIED**.

Dated: July 18, 2025                    *s/Laura M. Provinzino*
                                         Laura M. Provinzino
                                         United States District Judge